```
                     UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
                          EASTERN DIVISION

     -------------------------------X
     UNITED STATES OF AMERICA,       :  Case No. 5:15-cr-00323
                                     :
              Plaintiff,             :  Cleveland, Ohio
                                     :
         v.                          :  Wednesday,
                                     :  September 27, 2017
                                     :  10:21 a.m.
     DAVID K. TURNER,                :
                                     :
              Defendant.             :
     -------------------------------X


             TRANSCRIPT OF RESENTENCING PROCEEDINGS
              BEFORE THE HONORABLE DAN A. POLSTER
                   UNITED STATES DISTRICT



     Court Reporter:           Donnalee Cotone, RMR, CRR
                               NCRA Realtime Systems Administrator
                               United States District Court
                               801 West Superior Avenue
                               Court Reporters 7-189
                               Cleveland, Ohio 44113
                               216-357-7078
                               donnalee_cotone@ohnd.uscourts.gov
```

```
 1     APPEARANCES (Continued):

 2

 3     For the Government:      Brian M. McDonough,
                                Assistant United States Attorney
 4                              801 West Superior Avenue
                                Suite 400
 5                              Cleveland, Ohio 44113
                                216-622-3965
 6                              brian.mcdonough@usdoj.gov

 7     For the Defendant:       Carolyn M. Kucharski,
                                Assistant Federal Public Defender
 8                              Office of the Federal Public Defender
                                1660 West 2nd Street, Suite 750
 9                              Cleveland, Ohio 44113-1454
                                216-522-4856
10                              carolyn_kucharski@fd.org

11     For Probation:           David Abraham

12     Special FBI Agent:       Suzanne Lewis-Johnson

13

14

15

16

17

18

19

20

21

22

23

24
       Proceedings recorded by mechanical stenography, transcript
25     produced by computer-aided transcription.
```

```
                1         MORNING SESSION, WEDNESDAY, SEPTEMBER 27, 2017

                2             (Proceedings commenced at 10:21 a.m.)

                3                          - - -

                4         THE COURT:  All right.  Our next matter this
10:22:01        5   morning is case 5:15-cr-00323, United States versus David K.

                6   Turner.

                7         Mr. Turner is here with Ms. Kucharski, Mr. McDonough

                8   for the government, Mr. Abraham for probation.

                9         I initially sentenced Mr. Turner to 238 months
10:22:26       10   custody.  The Court of Appeals determined that I hadn't

               11   properly -- I may have used -- referred to the wrong

               12   guideline section and did not properly explain the two-level

               13   enhancement for use of a cell phone or computer device.

               14         So he's remanded for resentencing.  Mr. Abraham
10:22:55       15   prepared a revised report, which I received and reviewed.

               16         Mr. Turner, have you reviewed the revised report,

               17   dated July 14th?

               18             THE DEFENDANT:  Yes, sir.

               19             THE COURT:  And have you had a chance to
10:23:13       20   discuss it fully with Ms. Kucharski and ask her any

               21   questions that you might have?

               22             THE DEFENDANT:  Yes, Your Honor.

               23             THE COURT:  All right.  There are a number of

               24   objections.

10:23:22       25         What objections have not been taken care of that I
```

1 need to deal with now?

2 MS. KUCHARSKI: Your Honor, I believe that the

3 two main objections are paragraph 59, which deals with the

4 computer enhancement, and then the paragraph 64, which deals

5 with the five levels which the Court did not apply the last

6 time.

7 THE COURT: All right. I'm going to take care

8 of that quickly.

9 First, I went through that at the initial sentencing.

10 I determined that the facts did not warrant that five-level

11 enhancement. The government didn't appeal it, so I don't

12 think I have jurisdiction to revisit it. I think that any

13 objection is waived.

14 But even if I do have jurisdiction, the facts haven't

15 changed, and so I'm not going to apply it.

16 By the same token, the facts haven't changed for the

17 two-level enhancement, and the facts warrant a two-level

18 enhancement under 2G2.1(b)(6)(B)(ii).

19 Mr. Turner used his cell phone and Facebook to lure

20 the minor victim to run away and have sex with him, and

21 ultimately videotaped both of them having sex. So I didn't

22 make that clear initially, but I'm making it clear now. So

23 the two-level enhancement applies. So that's how I'm

24 dealing with those objections.

25 So I take it there are no other objections of any

1 consequence that I need to address?

2 MS. KUCHARSKI: No, Your Honor, but just for
3 purposes of the record, we would incorporate the sentencing
4 memo that we filed with regards to our objection to that
5 two-level enhancement and just note briefly for the record
6 that that two levels comes along with the count of sexual
7 exploitation of a minor by production of sexually explicit
8 material.

9 And it's our position that that enhancement should not
10 be applied when there was no contact with the minor directly
11 or someone *in loco parentis* of the minor with respect
12 to -- the computer was not used in that regard for this
13 production count.

14 THE COURT: Well, I don't believe the computer
15 has to be used directly with the minor.

16 The computer was used to help Mr. Turner commit the
17 offense and commit the harm connected with the offense, as
18 I've just spelled out.

19 MS. KUCHARSKI: But it has to be used in
20 connection with the production of the video that he made.

21 THE COURT: Well, I don't believe it does.

22 MS. KUCHARSKI: Okay. Well, we just note our
23 objection for the record.

24 THE COURT: All right. And I believe it was
25 also used to videotape Mr. Turner and the victim. So that

|  |  |
|---|---|
| 1 | clearly was used in the production.  That finding was used |
| 2 | in the production, the actual production of the video.  It |
| 3 | contained the child pornography.  So it was used both to |
| 4 | lure the victim and to produce the child pornography |
| 10:26:52  5 | explicitly. |

       6      All right.  Well, I'll hear from both sides, and, of

       7   course, from Mr. Turner on what I should do for sentence.

       8      So, Ms. Kucharski.

       9          MS. KUCHARSKI:  Thank you, Your Honor.

10:27:03 10      As the Court's aware, this matter was remanded for

      11   sentencing.  We are asking the Court at this time to

      12   sentence Mr. Turner to the mandatory minimum of 180 months.

      13   We believe that that's the sentence that's sufficient and

      14   not greater than necessary, and we also believe that that's

10:27:23 15   the appropriate -- within the appropriate guideline range,

      16   which, without the five levels that the Court chose not to

      17   apply, Mr. Turner would be a 38 minus 3 for a total offense

      18   level of 35, Criminal History Category I, and that 180

      19   months would be encompassed within that range.

10:27:45 20      Also, as the Court is aware from our prior sentencing

      21   memo, which was filed at the time of the original

      22   sentencing, which we incorporate for this Court in our

      23   updated sentencing memorandum, Mr. Turner --

      24         THE COURT:  Well, excuse me.  I think

10:28:04 25   it's -- I think it's 40 -- well, I'm applying the

|  |  |
|---|---|
| 1 | enhancement.  I believe it's 40 minus 3 is 37. |
| 2 | MS. KUCHARSKI:  Oh, you're correct, Your |
| 3 | Honor.  That was if he didn't apply the computer. |
| 4 | THE COURT:  Right.  So it's -- I should |
| 10:28:19  5 | have -- it was my fault.  I should have repeated it.  These |
| 6 | are the findings I made initially, and they haven't changed. |
| 7 | It's a 40 minus the 2 levels for acceptance, a third level |
| 8 | off for a timely guilty plea.  The government made that |
| 9 | motion before, so I'm obviously applying it. |
| 10:28:36  10 | So it's a 37, Category 1, which is 210 to 262.  There |
| 11 | is, of course, a 15-year, a 180-month mandatory minimum. |
| 12 | MS. KUCHARSKI:  And, of course, the Court does |
| 13 | have discretion to vary downward from that sentence based on |
| 14 | Mr. Turner's background, history, and characteristics. |
| 10:28:57  15 | As we detailed in that original sentencing memo, he |
| 16 | suffered severe emotional, physical, and sexual abuse |
| 17 | growing up.  He had a number of mental health issues which |
| 18 | continue to today. |
| 19 | Significant in his background, at one point -- which |
| 10:29:16  20 | we included in the exhibits to the initial sentencing |
| 21 | memorandum -- he was on a slew of a cocktail of mental |
| 22 | health medication as a young child, which basically left him |
| 23 | lethargic and unable to function. |
| 24 | He still suffers from mental health issues to this |
| 10:29:34  25 | day, and significant since he's been sentenced -- and I'd |

1  ask the Court to consider as a collateral consequence the
2  type of time an individual like Mr. Turner has to serve once
3  they go into the Bureau of Prisons with these type of
4  offenses. I'd ask the Court to consider that as a
5  collateral consequence.
6  For the year that he's been in custody, or over the
7  year period that he's been in custody, he's basically had to
8  check himself into the SHU unit, which is the segregated
9  housing unit, because he's been threatened on the yard
10 because of the bases of his offenses. So basically he is
11 only allowed out a minimal time per day, and he has to ask
12 for that for his own protection.
13 Now, I understand that recently the BOP has finally
14 moved him to another facility, and he did report to me the
15 other day when I met with him that things at least appear to
16 be a little better for him there.
17 But that first year was a tremendously hard year for
18 him, not only mental-health wise, but just basically being
19 in fear for his safety and his life on a daily basis.
20 And I understand that he placed himself in that
21 position with these types of charges, but you'd have to hope
22 that, you know, when you're in custody, that you would be
23 somewhat protected. But there are politics of the prison
24 yard, and unfortunately, those are the politics of the
25 prison yard.

1    I think based on his severe neglect and physical abuse
2    as a child, that explains how he wound up to be in this
3    situation. Even to this day when I meet with David,
4    mentally -- or physically, he's a 27-year-old man, but
5    mentally and emotionally, he's a 14-year-old kid.
6    His emotional growth was basically stunted by his
7    background and history and basically the fact that he was
8    turned over to the foster care system at the age of 7 and
9    his mother never wanted him back. And, of course, she never
10   would allow him to be adopted out either. So he bounced
11   around from foster home to foster home and basically aged
12   out of the system.
13   Now, he was fortunate during that period of time to
14   come across one foster family that he does still stay in
15   touch with that has been supportive of him. But basically
16   that is the statement of his 27 years.
17   He really does not have any stable family background.
18   His mother was a young mother who married a gentleman who
19   was significantly older than she was. There was sexual
20   abuse within the home, and as I've stated, physical abuse.
21   And we are asking the Court to take all of those
22   things into consideration, and the fact that a significant
23   sentence of 15 years will take Mr. Turner up to the point
24   where he is approximately age 40. And as studies suggest,
25   age 40 is that period of time where recidivism is shown to

1  start decreasing.  It certainly gives him enough time to
2  take advantage of all the prison programming that he can
3  with regards to sex offending and mental health.  Obviously,
4  those are issues that will have to be addressed when he's on
5  supervision.  You know, he's required -- I believe the Court
6  sentenced him to life supervision.  So that's another
7  collateral consequence.
8      So, Your Honor, those are the reasons we're asking for
9  a sentence of 180 months.
10     Thank you.
11         THE COURT:  All right.  Thank you,
12 Ms. Kucharski.
13     Mr. Turner, anything you would like to say?
14         THE DEFENDANT:  No, Your Honor.
15         THE COURT:  All right.  Mr. McDonough.
16         MR. McDONOUGH:  May it please the Court, Your
17 Honor.  The government would ask, again, for a guideline
18 sentence to be imposed in this case based on the sentencing
19 factors of 3553, the nature and circumstances of this
20 offense, and the history and characteristics of the
21 defendant.
22     As this Court is aware, the defendant traveled from
23 Tennessee to Ohio.  He used Facebook to meet, coerce, and
24 entice the 14-year-old victim to engage in sexual activity.
25     Your Honor, the government would incorporate the prior

1 sentence memoranda and the arguments at that prior
2 sentencing. The victim's mother spoke at that prior
3 sentencing. She is not available today. But we would ask
4 that her comments that she addressed the Court in her victim
5 impact statement be incorporated again.
6 The defendant did engage in sexual activity with the
7 victim, did videotape that using a smart phone to distribute
8 that and sent that to an adult female in Wyoming with the
9 goal that all three of them would have a sexual relationship
10 and live together in Wyoming.
11 In considering the need for the sentence imposed,
12 obviously, it's a very serious offense, as reflected in the
13 guidelines; to promote respect for the law and to provide
14 just punishment for this defendant, as the sentence would
15 provide adequate deterrence both generally to offenders who
16 use the Internet, use Facebook and social media sites to
17 essentially manipulate vulnerable victims.
18 And in this case, the 14-year-old, she was manipulated
19 into sending her baby-sitting money from Ohio to Tennessee
20 so the defendant could use that for bus fare to go ahead and
21 transfer to Ohio.
22 And it's certainly necessary -- the government does
23 realize that the mitigation and the defendant's
24 childhood and experiences that he's had. But it would be
25 necessary to protect the public from future conduct by him.

1 Just even as noted in the PSR, the different types of
2 communications and activities that this defendant has had
3 with others.
4 Your Honor, so the government would like to thank the
5 Massillon Police Department and the Canton Police Department
6 for their assistance in the case that led the case to being
7 adopted by the Cleveland Division of FBI's Canton resident
8 agency, and Special Agent Suzanne Lewis-Johnson who is here
9 today at the table for her work in this case.
10 Your Honor, with respect to the facts that -- the
11 Court is absolutely right. The facts have not changed since
12 our original sentencing.
13 The government does support the revised PSR and would
14 agree with the Court regarding the use of the computer under
15 Section 2G2.1(b)(6)(B)(ii), and that this defendant used his
16 phone in videotaping and producing the depiction of sexual
17 activity; used that to send that to the adult, Erian, and
18 further had text messages to Erian indicating about engaging
19 in a threesome with the minor victim. That computer was a
20 tool that was used to solicit sexual activity.
21 With respect to -- and as indicated in paragraph 59
22 and paragraphs 25 and 35 of the PSR.
23 With respect to paragraph 64, that Chapter 4
24 enhancement, the government's original theory of the
25 application of that was the defendant's prior conduct in

1    Wyoming.

2    The government provided testimony, and as it turns

3    out, there was no prior conduct that would justify a pattern

4    of activity. The government's alternate theory was that the

5    sexual activity that the defendant engaged in with the

6    victim, that that was a pattern of activity. There was

7    three instances, a break, and then a fourth instance.

8    And as this Court will recall, it was a close call,

9    but the Court found that that was within a 24-hour period

10   and didn't justify a pattern of activity. The government's

11   understanding that under the revised PSR for paragraph 64,

12   that the United States Sentencing Commission offered an

13   opinion that based on the defendant's other counts, the

14   traveling and the coercion, that those actually apply for a

15   pattern of -- a pattern of activity to justify the

16   five-level enhancement.

17   So although the facts have not changed, that was just

18   an alternate theory, and the government's understanding

19   would be that the sentencing would be *de novo*, that the

20   Court could go ahead and consider that. And so the Court is

21   correct, the government did not waive -- the Court's

22   interpretation that the government waived the other theories

23   of it, that this would be actually a new theory, but the

24   government certainly respects the Court's opinion regarding

25   those two.

1  THE COURT: I'm not sure -- well, it seems to
2  me that if you thought I was wrong, you should have
3  cross-appealed.
4  MR. McDONOUGH: Correct, Your Honor. And --
5  THE COURT: And I don't think you can raise it
6  now. But even so, I -- it's still a close call, but for the
7  reasons I said the first time, I'm not applying them.
8  MR. McDONOUGH: Thank you, Your Honor.
9  THE COURT: I think because all of his conduct
10 with this victim was in a very short period of time.
11 MR. McDONOUGH: Yes. And as noted, Your
12 Honor, the Court -- the government had already previously
13 separate harms --
14 THE COURT: Right.
15 MR. McDONOUGH: -- and the Court grouped them
16 together. So the government sees the Court's reasoning and
17 decision on that, Your Honor.
18 In any event, it is a serious offense. The government
19 does recognize the mitigation that the defense offered. But
20 in any event, Your Honor, there was harm done here to this
21 victim. It's a serious crime. And the government would ask
22 for another within guideline sentence to be imposed in this
23 case.
24 THE COURT: Well, I gave a lot of thought,
25 Mr. Turner, to my sentence when I imposed it the first time,

Case: 5:15-cr-00323-DAP Doc #: 60 Filed: 11/09/17 15 of 17. PageID #: 501

15

1  and both sides made the same arguments. Those arguments
2  still apply, but the reasoning I articulated the first time
3  still applies, and I don't see any reason to change that.
4  So I'm going to do the same thing.
5  I said when I sentenced you initially that I was very
6  mindful of the horrific upbringing you had, and it had to
7  have contributed to what you did in this case. No human
8  could be unaffected by that kind of upbringing. But I still
9  have to, at the end of the day, protect the community and
10 impose a sufficient punishment. And I determined that,
11 balancing everything, that the 238 months was appropriate.
12 It was the 240, and then I gave you credit for two years of
13 state time for which you would not -- two months credit for
14 state time, for which you otherwise would not get credit.
15 So I ended up with 238, and that's what I'm going to do
16 again.
17 And the way I fashioned it still applies. It's 238
18 months for Count 1; 238 months for Count 3; 238 months for
19 Count 4; 120 months for Count 2, all sentences to run
20 concurrent with each other. So that's a total of 238
21 months. Lifetime supervised release still applies with all
22 the standard conditions -- all the special conditions for
23 sex offender and the standard conditions, so that hasn't
24 changed.
25 I didn't impose a fine the first time; I'm not doing

1 it this time. There's a mandatory $400 special assessment;
2 $100 on each of the four counts I imposed the first time and
3 I'm imposing the second time. I think that covers it.
4 And, again, Mr. McDonough emphasized that you used the
5 computer, not only to lure the victim, your cell phone in
6 particular, which qualifies as a computer, but then you used
7 it to produce the child pornography because you videotaped
8 yourself and the victim having sex, and then you further
9 used that cell phone computer to distribute that film to
10 another person with the object of having more sexual
11 activity with the victim. So it's clearly bound up in the
12 counts of conviction, and that's why I'm applying the
13 two-level enhancement.
14 All right. You do, sir, have the right to appeal the
15 conviction and sentence. If you wish to do so, you have 42
16 days to file a Notice of Appeal.
17 Do you understand that?
18 THE DEFENDANT: Yes, Your Honor.
19 THE COURT: Okay. Any general or specific
20 objections?
21 MS. KUCHARSKI: We would just renew our
22 previous objections, Your Honor, and nothing further.
23 THE COURT: Okay.
24 MR. McDONOUGH: Your Honor, on the issue of
25 SORNA, as well as the --

1  THE COURT: I'll impose that. The same SORNA,
2  Adam Walsh, that I imposed the first time, I'm imposing the
3  second time. No change.
4  MR. McDONOUGH: Thank you, Your Honor.
10:43:30 5  THE COURT: All right. I neglected to impose
6  a mental health aftercare as part of the supervised release
7  the first time. I don't know why, but that was an
8  oversight, and I think it's going to be necessary. So I
9  will add that.
10:43:47 10  Okay. Thank you, and we are adjourned.
11  MS. KUCHARSKI: Thank you, Your Honor.
12  MR. McDONOUGH: Thank you, Your Honor.
13  DEPUTY CLERK: All rise.
14  - - -
15  (Proceedings adjourned at 10:46 a.m.)
16
17
18
19  **C E R T I F I C A T E**
20
21  I certify that the foregoing is a correct transcript
22  from the record of proceedings in the above-entitled matter.
23
24  */s/ Donnalee Cotone          9th of November, 2017*
   DONNALEE COTONE, RMR, CRR                          DATE
25  NCRA Realtime Systems Administrator